THE KANOPOLIS LAND COMPANY v. R. V. MORGAN.

1. QUESTION OF LAW—*What is Not.* What constitutes reading-matter, as distinguished from advertisements in a newspaper, is not, under the facts of this case, a question of law to be determined by the court and withdrawn from the consideration of the jury.

2. CONTRACT—*Specific Services.* A contract to pay a certain amount in specific services cannot be converted into a demand for payment in money, without alleging and proving a previous demand and refusal to pay according to the terms of the contract.

3. TIME, *not of the Essence—Forfeiture.* When time is not made of the essence of a contract for payment by the performance of specific services, the party entitled to such services does not absolutely forfeit them by failing to require them within the time named in the contract.

MEMORANDUM.—Error from Ellsworth district court; W. G. EASTLAND, judge. Action on a contract by R. V. Morgan against the Kanopolis Land Company. From the judgment rendered, the defendant brings error. Reversed. The material facts are stated in the opinion, filed July 6, 1895.

*Ira E. Lloyd,* for plaintiff in error.

*Lafferty & Sternberg,* for defendant in error.

The opinion of the court was delivered by

CLARK, J.: The defendant in error, R. V. Morgan, brought this action against the Kanopolis Land Company to recover on an account for printing of various

5—APP.

kinds, alleged to have been done for said company between January 31, 1888, and May 24, 1890, on which was a claimed balance due of $5,534.62. The larger part of the account was for alleged advertisements inserted May 24, 1890, in a weekly newspaper, called the Kanopolis *Journal*, published by Morgan at Kanopolis. The defendant answered by denying the correctness of plaintiff's account, and setting up numerous items of account on its part against Morgan. A part of the indebtedness from Morgan to the company was alleged to be for the purchase-price of the newspaper, printing-presses and outfit, which said company sold to one S. A. Day, May 16, 1886, under a written contract, which, among other things, provided —

"That he [Day] is to pay said company $4,000 in printing at Kanopolis, for said company or its order, on reasonable terms, for all job printing ; and all sample copies of a paper not less than 22x30 inches in size, to be furnished at 2½ cents per copy by said Day, or assigns, in editions of not less than 5,000 copies — the Kanopolis Land Company to furnish wrappers already directed, and their clerks to go to said printing office and wrap or mail said papers ; said Day, or assigns, to furnish ample convenience for said work without charge. Said Day, or assigns, to insert any reading-matter desired by the Kanopolis Land Company in sample copies in lieu of other matter without any extra charge, if said matter is standing in type, but, if new or additional reading-matter is to be inserted, then the cost of composition is to be paid for extra at the rate of 30 cents per 1,000 ems — the said printing to be done at the rate of at least $1,000 each year ; and any printing done for said company by the said Day in excess of that sum shall be at the rates aforesaid, and paid for in cash, at Day's option."

Day sold the printing-presses and outfit, together with his newspaper, to Morgan, November 8, 1886,

Morgan assuming the obligations of the contract between Day and the Kanopolis Land Company, including the payment of the $4,000. In its answer, said company claimed as still due and owing to it of said purchase-price the sum of $1,182.68.

The principal contention between the parties upon the trial was as to the meaning of the words "reading-matter," in the part of the written contract above quoted; it being claimed on the part of the defendant below that all the matter inserted in plaintiff's newspaper for which he sought to charge regular advertising rates was merely reading-matter, as provided for by said contract, and for which plaintiff was entitled to compensation as specially stipulated therein. This printed matter was inserted in the Kanopolis *Journal* issued May 24, 1890, for one week only, and an order was given by the company for 50,000 sample copies of said issue. This order was given May 6, 1890, being within the four years from and after May 16, 1886, for which period of time it was agreed that the contract entered into on said last-named date should be in force, and said Day and his assigns should publish the Kanopolis *Journal*. In his account, attached to the petition in this case, Morgan charged the company for 50,000 sample copies, at the rate of 2½ cents per copy, the price stipulated in the contract, and also charged advertising rates for certain printed matter inserted at the request of said company. Testimony was introduced upon the trial showing the circumstances surrounding the parties when the contract of May 16, 1886, was entered into, and various transactions and dealings between the parties from that date up to and including the period of time covered by said account. A copy of the issue of the paper of May 24, 1890, having been introduced in

evidence, the court assumed, as a question of law, to decide what parts of the paper consisted of reading-matter and what part should be classed as advertisements, for which the plaintiff was entitled to recover at regular advertising rates. As stated by counsel for defendant in error in their brief, ''the court withdrew from the consideration of the jury of the matter claimed by the plaintiff to be advertisements, 958 lines, and submitted to the jury as advertisements 438 lines.'' This ruling is complained of as erroneous. The instruction itself was as follows:

''You are instructed that the articles marked and designated in the copy of the Kanopolis *Journal* are advertising matter, and are not matters included in the term 'reading-matter' stated in said contract, but are such matters and advertisements for which the plaintiff is entitled to recover pay from defendant, and for which plaintiff is allowed to charge the usual and ordinary charges for such advertising matter.''

In giving this instruction, we think the court invaded the province of the jury by assuming to determine a disputed question of fact. What was meant by the parties to the contract by the use of the words, ''reading-matter,'' was to be determined by a consideration of the situation of the parties, the circumstances surrounding them at the time the contract was made, and the purposes and objects they had in view to be accomplished by the doing of the things thus provided for. What might be properly considered ''reading-matter'' under some circumstances, under other and different circumstances would not be so classified. No certain or fixed rule can probably be applied to enable a court from a mere inspection of a newspaper to say to what particular class of printed matter every insertion should belong. To reach such determination satisfactorily, the court must look be-

yond the printed page, and gather light from its associations.   When it does that, it enters the domain of facts, and finds no settled legal rules.   Even if we should be of the opinion that it was proper for the court to thus go through the pages of the newspaper, marking that which was designated as advertisements as distinguished from reading-matter, we think the court erred in its judgment, and that some of the articles which the court marked as advertisements are clearly nothing more than local news items.

Again, we think the court erred in its views of the rights of the parties under the contract concerning the payment of the $4,000 purchase-money.   As stated in the contract, this $4,000 was to be paid in printing and sample copies of the Kanopolis *Journal*, "at the rate at least $1,000 each year."   The court held that this obligated the company to furnish to Morgan at least $1,000 worth of printing during each of the four years, and if it failed to do so, it forfeited, absolutely, all claim to payment to that extent.   The court therefore instructed to deduct from defendant's claim, for any balance due on the $4,000 for each of the four years, an amount equal to the difference between the amount of printing actually done for the company in that year and the sum of $1,000.   The testimony shows that the parties raised no question until on the trial as to the amount of printing that was being done each year ; and there is no allegation in any of the pleadings suggestive of a complaint of either party against the other for any failure to comply with this part of the contract.   Being a contract for the payment of this sum in specific services, the defendant could not convert it into a debt payable in money and recover therefor, without an allegation or proof that payment in the stipulated services had

been demanded and refused. There being no such allegations or proof, the defendant had no legal claim against the plaintiff for any balance that might be unpaid of the $4,000. On the other hand, in the light of the evidence, the contract cannot now be enforced as an obligation on the part of the company to furnish Morgan with printing to the amount of $1,000 each year, and, upon a failure so to do in any one year, to absolutely forfeit a proportionate amount of the purchase-money. There is nothing in the language of the contract indicating that time was made so essential a part of it as to work such results; and the conduct of the parties shows that they did not so understand it. Unless it was so intended and understood, the defendant had a right to have any balance due of the $4,000 purchase-money credited against the sum it was owing plaintiff for printing and sample copies of paper.

Numerous other errors are complained of in the admission and rejection of testimony, but are, for the most part, not of sufficient importance to be separately considered. The well-settled rules of evidence must control as to the admission of evidence in any inquiry concerning the value of materials or services. In some instances these rules were disregarded by the trial court in this case. It is also always competent, for the purpose of arriving at the understanding and intention of the parties to a contract, to admit testimony of their dealings under it, when the language of the contract does not itself furnish an infallible guide to such meaning. On another trial, the minor errors complained of will probably not be repeated. There are not sufficient special findings of fact to enable the court to say in what manner the jury arrived at its verdict, or to determine to what extent

the errors of the court prejudiced the plaintiff in error.

The judgment must be reversed, and a new trial had.

All the Judges concurring.